IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 1:88-cr-1026-MMP-AK

JOSE ELIAS SEPULVEDA,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

      This matter is before the Court on Doc. 3336, Motion to Vacate under 28 U.S.C. § 2255, with supporting memorandum, by Jose Elias Sepulveda. The Government has filed its response, Doc. 3354, and Defendant has filed a reply. Doc. 3403. Also pending is Defendant's motion for appointment of counsel, Doc. 3337, to which the Government has responded. Doc. 3340. In addition, pursuant to a direct referral from Judge Paul, Doc. 3415, there is pending before the undersigned for consideration Defendant's motion for sanctions and disciplinary action against counsel for the Government. Doc. 3366. The Government has also filed a response to this motion. Doc. 3367. Though Defendant has filed all of these motions and replies *pro se*, an attorney, Lloyd Vipperman, has now entered an appearance on his behalf, though he has not filed any additional documents on Defendant's behalf. Doc. 3473. This is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## **BACKGROUND**

Defendant was charged in a Fifth Superseding Indictment with conspiracy to import marijuana, hashish oil, and cocaine; conspiracy to distribute and to possess with intent to distribute those substances; importation of marijuana; possession with intent to distribute marijuana; and interstate travel in aid of an unlawful activity.  Doc. 1843.  Defendant was a fugitive until 1997, when Defendant was arrested in Puerto Rico.  Doc. 2759.  Shortly after Defendant's initial appearance, the Court appointed James Gustavson as an interpreter for Defendant.  Doc. 2798.

A month before trial was scheduled to begin, retained counsel for Defendant filed a motion to withdraw citing a "[s]erious conflict of interest" between counsel and Defendant which had led to a "complete and full deterioration of any and all trust and communication...."  Doc. 2816.  Because Defendant sought court-appointed replacement counsel, the Court directed Defendant and counsel to file affidavits setting forth the nature of their fee arrangement and Defendant's financial condition.  Doc. 28 15.  Counsel indicated that the fees had been paid by Gloria Reyes.  Thereafter, the Court granted the motion to withdraw, and again directed Defendant to file an affidavit "in conformity" with the Court's previous instructions.  Doc. 2826.  After Defendant finally complied with the Court's order, the Court found that he did not qualify for court-appointed counsel.  Doc. 2865.  Defendant sought reconsideration of that order, and the Court held a hearing thereon.  Doc. 2915.  The Court again instructed Defendant that he must either hire his own counsel or "choose between representing himself and appealing the denial of appointment of counsel" to the Eleventh Circuit.  Doc. 3321.  In reaching this conclusion, the Court credited the Government's contentions that defendant owned over $200,000 in money

orders which were subject to forfeiture. *Id.* Shortly thereafter, the Court held a hearing on Defendant's waiver of right to counsel and again urged Defendant to appeal the Court's denial of appointment of counsel. *Id.* Ten days later, it issued another order again advising Defendant to appeal the ruling. Doc. 2910.

Defendant did not appeal the ruling. Though he continued "to make requests of the Court for counsel and for funds for subpoenas–all of which were denied," and to maintain "that he did not desire to proceed *pro se*," Defendant nevertheless advised the Court that he would proceed *pro se* rather than delay the trial. Doc. 3321.

Except for one day, when a substitute interpreter appeared, Mr. Gustavson was present during trial. After a seven-day trial, Defendant was convicted on August 4, 1998, of conspiracy to import and conspiracy to possess with intent to distribute marijuana, hashish oil, and cocaine. He was found not guilty on the other three counts. The Court had specifically instructed the jury that it need not concern itself with drug quantities, as that was a matter relevant only to sentencing. Doc. 3321.

The Presentence Report (PSR), which the Court adopted, found Defendant responsible for 10,251 kilograms of marijuana and 206 kilograms of cocaine, resulting in a life sentence. *Id.*

Defendant appealed, raising seven claims of error. The court specifically considered three of them--(1) the denial of appointment of counsel violated the Constitution and the Criminal Justice Act; (2) the requirement that he wear a stun belt during trial violated the Constitution; and (3) his sentences violated *Apprendi*–and rejected the remaining four claims–(1) the Court denied Defendant fair trial and due process by forcing him to trial *pro se*, denying him subpoenas and investigative assistance, denying him assistance of an interpreter, forcing him to

attend trial in his jail uniform and dirty clothes, restricting cross-examination, and chastising him in jury's presence; (2) the Court violated constitutional and statutory right to speedy trial; (3) the Court erred in denying motions for judgment of acquittal; and (4) the Court erred in sentencing him under the Sentencing Guidelines--without discussion as "wholly without merit." *Id*.

As to the first claim regarding counsel, the Eleventh Circuit found that "[b]y failing to file even a superficially believable affidavit of indigency, Sepulveda failed to meet the burden of establishing that he qualified for appointed counsel." *Id*. The court also rejected Defendant's assertion that his misstatements regarding his assets were not determinative because anything "he might have listed would have been seized by the government and unavailable to pay for legal representation," finding that he "could not refuse to disclose his assets and still qualify for appointed counsel." *Id*.

As to the second claim regarding the stun belt, the court found that there was no abuse of discretion in deciding to use a stun belt as a restraint. *Id*. Finally, as to the third claim, the court found that although *Apprendi* error had occurred, it was harmless, concluding that "'the chances are virtually nil' that the jury, confronted with testimony about Sepulveda's participation in this long-lasting conspiracy, could have found that he was responsible for less than the statutory amount" necessary for a life sentence. *Id*.

The instant motion to vacate followed. Each claim will be considered in turn.

**DISCUSSION**

    1.    Denial of counsel.

In this claim, Defendant contends that the Court erred in denying him counsel when it knew he was not fluent in the English language, and the "lack of English proficiency severely prejudiced [his] ability to mount a meaningful and competent defense." He concedes that he possesses a "reasonable ability to speak English."

There is no requirement that a defendant be "fluent" in the English language before he can represent himself; rather, he must reasonably understand the proceedings and have at his disposal an interpreter to assist him as necessary. In this case, though, the Court did make a finding on the record that Defendant was in fact fluent in English, *see* Doc. 3239, a conclusion supported by (1) the abundance of pleadings and letters from Defendant to the Court written in English; (2) Defendant's reading of case law and pleadings into the record in English, *see* Doc. 3132; (3) Defendant's claims to the Court that he could read English "really well," that he had prepared for trial by reading 15 hours a day, and that he decided not to appeal regarding the denial of appointed counsel after reading the cases cited in the Court's order, *see* Docs. 2911 & 3132; and (4) Defendant's admission that he had read the transcripts, written in English, from the previous trial, *see* Doc. 3240. It also made sure that he had an interpreter with him at counsel table during the entire trial. In his post-trial communications to appellate counsel, Defendant enclosed an appellate brief on which he had been working and which he "would have filed if the Court of Appeals had denied my request for counsel." He told counsel that he wanted to be involved in the appellate process and bragged that although he was a layman and not trained in the law, "I do have some victories....I was acquitted on (3) three counts of the indictment while I

was forced to defend myself pro se....None of my other co-defendants were acquitted on these same counts in three different trials even though they had...'Big Gun Lawyers'...."  For the most part, Defendant's pleadings and letters show a mastery not only of English words and phrasing but also the rules of grammar and punctuation which far exceeds that of many native-born litigants (and some attorneys) who appear in this Court.  He also has demonstrated a remarkable command of the law and its niceties.

In short, Defendant, who has lived in the United States almost all of his life, *see* PSR, is not a defendant who suffers from an inability to communicate effectively in English, and thus, the Court did not err in denying him appointment of counsel for this reason.  Furthermore, by representing himself, Defendant relinquished his right thereafter to "complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 822 n.46 (1975).

Furthermore, Defendant's claim that the Court's refusal to appoint him counsel deprived him of a meaningful defense is flatly belied by the fact that he did in fact secure for himself an acquittal on three of the five counts against him.  Defendant himself told the Court that he was reading legal cases for the majority of the day, which he got from someplace, and his numerous citations to case law and statutes further contradict his claim that he was denied access to a law library.  In addition, the Eleventh Circuit categorically found Defendant's claim that he was denied a fair trial and due process by the Court's forcing him to trial *pro se* and by denying him subpoenas and investigative assistance to be wholly without merit, and the Court has no intention of reconsidering those conclusions in this proceeding.  *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001).

*Case No: 1:88-cr-1026-MMP-AK*

2. Method used to determine right to appointed counsel.

In this claim, Defendant argues that he was denied due process and the right to appointed counsel by the method used to assess his financial status. This issue was fully explored on appeal and rejected by the Eleventh Circuit. Again, this issue will not reconsidered in this proceeding. *See Nyhuis*, 211 F.3d at 1343.

3. Denial of fair trial and due process.

Defendant acknowledges that this claim was raised on appeal but argues that the court failed to address it. Though the court of appeals failed to analyze the claim, it did consider the claim and rejected it out of hand. *See* Doc. 3321. It will not be reconsidered.

4. Judgment of acquittal.

This claim was also raised on appeal and rejected as wholly without merit. *See* Doc. 3321. It too will not be reconsidered.

5. Speedy trial.

This claim was raised on appeal and rejected as wholly without merit. *See* Doc. 3321. It will not be reconsidered.

6. Sentencing under Guidelines.

Again, this claim was raised on appeal and found to be meritless. *See* Doc. 3321. The Court will not reconsider it now.

7.      Removal from courtroom.

In this claim, Defendant argues that appellate counsel was ineffective for failing to raise an issue on direct appeal regarding Defendant's removal from the courtroom, which he claims was for "objecting too much."

An appellate attorney is not required to raise frivolous issues on appeal. This would have been a frivolous issue. The record plainly shows that Defendant, who had already been held in contempt five times during the course of the trial, immediately began objecting to the Government's closing arguments. They continued throughout the Government's argument, and in total, Defendant made twenty-eight groundless objections. The Court nevertheless allowed Defendant to remain in the courtroom and make his own closing arguments in full. In those arguments, Defendant ignored rulings made by the Court during the course of trial and continued to argue impermissibly, resulting in multiple warnings and a chastisement from the Court. As soon as the Government began its rebuttal arguments, Defendant started objecting and made eleven objections, all of which violated court orders and rules as Defendant made testifying statements and argument. The Court warned Defendant three times that if he persisted, he would be removed. Defendant persisted, and he was removed. The Court then allowed Defendant to return for instructions and the verdict.

In total, Defendant missed six minutes of the Government's rebuttal argument, which hardly prejudiced him in any way whatsoever, and the Court was plainly within its discretion in ordering Defendant's removal after his repeated ignoring of the Court's orders, directions, and warnings. Counsel was not ineffective for failing to raise this issue on appeal.

8.      Forced choice between right to counsel and right to speedy trial.

In this claim, Defendant maintains that appellate counsel was ineffective for failing to argue on appeal that the Court inappropriately forced him to choose between his right to counsel and his right to a speedy trial. The Court did not "force" Defendant to go to trial without counsel. He made that choice by failing to prove his indigency and then refusing to hire counsel after court-appointed counsel was denied. As the Eleventh Circuit found, Defendant attempted "to have his cake and eat it, too," i.e., provide false information regarding his assets in order to protect them from forfeiture and then expect the Court to provide him with counsel. The Court repeatedly explained to Defendant the need to be forthright, but he chose to ignore the Court's exhortations, which was plainly his right, but he cannot now complain that the Court's actions, as opposed to his own, caused the forfeiture of counsel or placed him in an untenable position with regard to the timing of trial.

Counsel was therefore not deficient in failing to raise this issue on appeal beyond that which she raised regarding the appointment of counsel.

9. Government misconduct regarding witness sequestration.

In this claim, Defendant alleges that appellate counsel was ineffective for failing to argue on appeal that the Government engaged in misconduct by failing to sequester the witnesses against him who now claim that while housed at the Cross City County Jail, they discussed their "anticipated" testimony "[w]hile awaiting trial." The affidavits are dated May 12, 2004, and thus, there is nothing to show that appellate counsel even suspected this might be an issue for appeal, and in fact, the appellate brief which Defendant prepared himself before appellate counsel was appointed makes no mention of a violation of the sequestration rule. Furthermore, as the Court previously noted, Defendant cannot complain that he rendered ineffective assistance

of counsel in representing himself.  In addition, Defendant points to nothing to suggest that he invoked the witness sequestration rule, Fed. R. Evid. 615, or that the Government's witnesses were not in fact sequestered during the course of trial.  Instead, his arguments points to the fact that the witnesses discussed their "anticipated" testimony while they are in jail before trial, not at the courthouse during trial.  There is no allegation that the Government improperly coached the witnesses or attempted to alter their testimony or suggested they violate any order from the Court, and there is absolutely no evidence that, even if the witnesses did discuss their anticipated testimony, their testimony was untruthful.  Indeed, without some evidence of collusion or improper conduct on the part of the Government, it is unlikely that the witnesses' testimony would have been excluded in any event.  Even if the testimony of the two subject witnesses had been excluded, there is not a reasonable probability that the outcome of the trial would have been different, as there was additional "overwhelming evidence" of Defendant's knowing participation in a "conspiracy of great magnitude."

    10.    Contempt.

Defendant next claims that he and appellate counsel were ineffective in failing to challenge the sentences on the five contempt citations issued to him during the course of trial.  Defendant is mistaken as to his sentence.  The Court sentenced him to six months on each of the five citations, to run concurrently to each other but consecutively to the life sentence.  Thus, when Defendant completes his life sentence on the drug convictions, he will have to serve an additional six months for contempt.  This is plainly in compliance with *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974).

    11.    *Apprendi* and *Blakely*.

Defendant's *Apprendi* arguments were considered and rejected on appeal, and they will not be reconsidered here. *Blakely* (and subsequently *Booker*) were decided after Defendant's case became final and are not retroactively applicable to cases on collateral review, as their "constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).

    12.    Motion for appointment of counsel.

Because an evidentiary hearing is not necessary, the Court does not believe that Defendant has stated grounds for appointment of counsel. Indeed, he has now secured counsel, and thus, appointment would seem not to be necessary even if the Court were inclined in that direction. The motion for appointment of counsel should also be **DENIED**.

    13.    Motion for sanctions and disciplinary action.

As noted in the introduction, Defendant's motion for sanctions and disciplinary action against counsel for the Government, Doc. 3366, was referred to the undersigned for recommended disposition. In this motion, Defendant states that the Government, in its response to the motion to vacate, made false, unsupported statements "for the purposes of harassing the petitioner, obtaining a ruling favorable to the government, and to have the petitioner appear as if he had not acted in good faith in an attempt to assure that his is administered justice."

The motion for sanctions is patently frivolous, as the Government did not in the slightest manner misrepresent the rulings of this Court or the Eleventh Circuit or the record of proceedings. They speak for themselves and flatly refute any claim that the Government acted improperly in framing its response to the motion to vacate. The motion should therefore be

denied.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED**:

That Defendant's motion to vacate, Doc. 3336, be **DENIED;**

That Defendant's motion for appointment of counsel, Doc. 3337, be **DENIED;**

That Defendant's motion for sanctions, Doc. 3366, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this   **26th**   day of February, 2008.

> *s/ A. KORNBLUM*
> **ALLAN KORNBLUM**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**