UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA        CASE NO.: 1:88-CR-01026-
MW-GRJ-6

v.

JOSE ELIAS SEPULVEDA

## 18 USC §3582(C)(1)(A)(i) MOTION TO REDUCE SENTENCE

COMES NOW, the Defendant, Jose Elias Sepulveda, and respectfully

moves this Court pursuant to 18 U.S.C. § 3582(C)(1)(A)(i) and moves this

Honorable Court for an order reducing his sentence to time-served. The First Step

Act contemplates reductions for "Extraordinary and Compelling" reasons which

exist as detailed below. See Pub.L. No. 115-391 Stat. 5194, At §603 (December

21, 2018).

## PROCEDURAL HISTORY

Mr. Sepulveda was charged in five-counts of a 34-count indictment with

conspiracy to import a controlled substance, in violation of 21 U.S.C. §952 and

§960 (b)(1)(A)(count 2) and conspiracy to possess with intent to distribute

controlled substances, in violation of 21 U.S.C.§841(b)(1)(A)(count 3), aiding and

abetting (counts 26 and 27) and travel in foreign commerce in violation of 18

U.S.C.§2 and §1952 (a)(3) (count 29).

1

On August 4, 1998, the Petitioner was found guilty as to counts two and three of the indictment and on February 4, 1999 was sentenced by this Honorable Court to life imprisonment followed by five years of supervised release.

Mr. Sepulveda appealed the conviction to the Eleventh Circuit Court of Appeals which affirmed the conviction on December 24, 2002. Rehearing was denied on January 13, 2003. Certiorari review by the Supreme Court was denied on October 6, 2003. Rehearing by the Supreme Court was denied December 8, 2003. Petitioner's 28 U.S.C. § 2255 was denied on November 3, 2008. The Petitioner appealed the District Court's denial of his certificate of appealability on December 12, 2008. The Eleventh Circuit Court of Appeals denied a certificate of appealability on February 26, 2009. The Supreme Court denied certiorari on the issue on June 19, 2009.

Mr. Sepulveda filed a 60(b)(6) motion which was denied by this Honorable Court for lack of jurisdiction and as being untimely on October 4, 2018. The Petitioner's numerous requests for Court appointed counsel, for pre-trial, trial and sentencing were denied, and he represented himself.

## INTRODUCTION

The Petitioner was sentenced to life imprisonment before the US Supreme Court's holdings in *Booker* and *Alleyne* were decided and he could not do anything

to mitigate the effect of the sentences. In handing down the sentence, the Honorable Judge Maurice M. Paul's hands were tied, since he could not deviate from the then mandatory Guidelines applicable to 21 U.S.C. § 952 and §960(b)(1)(A) and 21 U.S.C. § 841(b)(1)(A).

If Sepulveda would have been convicted of the offenses charged against him today, with the operation of the constitutional principles reinstated by the Supreme Court in *Alleyne*, Sepulveda would have been sentenced to a lower statutory maximum penalty of 20 years.

Sepulveda's offenses in the conspiracy commenced in 1978 when he was 22 years of age and ended when he was 32 years old. Sepulveda will be 66 years old on November 20, 2021. He has already served a quarter-century in prison, almost half of his life, with no projected release date as a non-violent first offender. Sepulveda fully acknowledges the bad decisions he made and is deeply remorseful for his conduct when he was younger. The 23 years he has already served have humbled him deeply, and his conduct in prison is a testament to his rehabilitation and determination to turn his life around.

Sepulveda has exhausted all of his administrative remedies requesting the Warden of FCC Coleman Medium and the BOP, asking that they move this Court for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The request has been acknowledged by the Bureau of Prisons, but the BOP has not filed a motion

on Sepulveda's behalf. The BOP, as gatekeepers and part of the Department of Justice, have historically been unwilling to file motions for sentence reduction. The First Step Act allows Mr. Sepulveda to come directly to the Court to request a reduction of his sentence. He now asks this Honorable Court to exercise the power conferred to the Court by the First Step Act to reduce his sentence.

## DISCUSSION

This Court has the authority to reduce Mr. Sepulveda's sentence based on the extraordinary and compelling circumstances present here. First, the Court has the jurisdiction to hear this motion since Mr. Sepulveda has exhausted his administrative remedies. Second, the changes to 18 U.S.C. §3582(c)(1)(A)(i) made by the First Step Act have finally vested courts with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction. Such circumstances exist in this case. Third, the factors a court must consider in determining an appropriate sentence all weigh strongly in favor of a time-served adjustment in Sepulveda's sentence.

## THE COURT HAS THE AUTHORITY TO REDUCE SEPULVEDA'S SENTENCE BASED ON "EXTRAORDINARY AND COMPELLING REASONS"

The Compassionate Release Statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except in four situations, one of which

4

was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But although the court had the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper - that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. §3582 (c)(1)(A)(i); see also PL98-473 (H.J. Res. 648), PL 98-473, 98 Stat 1837 Oct. 12, 1984.

That changed when Congress enacted the First Step Act, which amended §3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194. at §603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in two circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) upon motion of the defendant, if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed from the receipts of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c) (1) (A). See *United States v. Cantu,* 423 F. Supp. 3d 345 349 (S.D. Tex. June 17, 2019*)* (" [U]nder the newly amended § 3582 (C) (1) (A) [the defendant] has standing to bring this motion because more than 30 days elapsed between his

reduction in sentence request to the warden and a response."); *United States v. Cantu-Rivera,* No. CR H-89-204, 2019 WL 2578272 at *1 (S.D. Tex. June 24, 2019). Sepulveda has exhausted his administrative remedies. The Court therefore has the authority to address Sepulveda's motion. The BOP did not file a motion with this Court on Sepulveda's behalf. Accordingly, Sepulveda is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. §3582(c)(1)(A), and this Honorable Court is vested with the jurisdiction to rule on the requested relief.

## THE RELIEF REQUESTED HERE IS CONSISTENT WITH THE TEXT OF THE STATUTE AND SENTENCING COMMISSION'S POLICY STATEMENT

Congress did not limit "extraordinary and compelling reasons" to a specific, enumerated set of circumstances. Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under §3582(c). The legislative history confirms that it intended to grant Federal sentencing courts broad discretion to make those determinations on a case-by-case basis, and to reduce fundamentally unfair sentences where such reasons exist.

Congress's initial goal in passing the comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 09-225, at 52, 53 n.74 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process:

The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. That would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted, have been later amended to provide a shorter term of imprisonment.

*Id.* 55-56. It therefore allowed for judicial reduction of certain sentences under §3582(c), rather than having the Parole Commission review every federal sentence. Congress decided to let sentencing courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, that "there is a justification for reducing a term of imprisonment." *Id.* at 56.

The situations listed in §3582(c) were thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions when justified by factors that previously could have been addressed through the (now abolished) parole system. *Id.* at 121. This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and permitted "later review of sentences in particularly compelling situations." Id. Notably, Congress imposed no limitation on courts' authority to make such determinations, declining to define what constitutes "extraordinary and compelling reasons" or to otherwise constrain judges' discretion. The mandate was simply: If extraordinary and compelling circumstances were present, they would "justify a reduction of an unusually long sentence." S. Rep. No. 98-225, at 55-56 (1983).

Unfortunately, the establishment of the BOP as a gatekeeper effectively eliminated that safety valve. The BOP, part of the Department of Justice, hardly ever opened the gate[1] to address this reality. Congress, through the First Step Act, now allows direct access to the sentencing court once an inmate's request to the BOP has been exhausted.

The U.S. Sentencing Commission has not limited "extraordinary and compelling reasons" to medical, age-related, or family circumstances. When enacting §3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). *See* 28 U.S.C. §994(t) ("The Commission shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); see also 28 U.S.C. §992(a)(2) (the Commission shall promulgate policy statements regarding "the sentence modification set forth in sections ...3582(a) of title 18"). The resulting policy statement by the Commission set forth the following factual considerations: (I) the medical condition of the defendant (including terminal illness and other serious conditions and impairments), (II) the age of the defendant (for those 65 and older

[1] See, eg., The Answer is No: Too Little Compassionate Release in US Federal Prisons. *Human Rights Watch*, 2 (Nov.2012), https://www.hrw.org/sites/defult/files/reports/usll12ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than two dozen).

with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment); (III) the family circumstances of the defendant (where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver); and (IV) "other reasons" as determined by the BOP. U.S.S.G. § 1B1.13, Application Note 1(A). The fourth category specifically includes "an extraordinary and compelling reason other than, or in combination with," the first three[2] *Id.* Additionally, the commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, Application Note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction," Id.

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even when an inmate is not elderly, ill, or facing dire, caregiver-related family circumstances. And though the policy statement-- which has not been amended since the passage of the First Step Act--vested the Director of the BOP with the authority to determine when such "other reasons"

---

[2] I-II-III & Iv apply to Sepulveda. Age-Related and Family circumstances are present in Sepulveda's case. His mother is 83 years old and lives with her ill husband and needs her only son to care for them. Also, Sepulveda turned 65 years old on November 20, 2020 and is a chronic care inmate, with deterioration cause by aging and has been incarcerated for twenty-four years.

might warrant a reduction in a particular case, *the language is now irreconcilable with the revised statute*, which permits a defendant to bring a §3582 motion to the Court without any response from the BOP or even if the *BOP expressly decides that no reasons warrant a reduction of sentence.* Accordingly, that aspect of the commentary is not binding on the courts because it is inconsistent with the amended text of §3582--and the undisputed purpose of the First Step Act--which, "[l]ike other sentencing statutes ... trump the Guidelines." *Dorsey v. United States,* 567 U.S. 260, 266 (2012). Congress has finally removed the BOP's blessing as a prerequisite to relief under § 3582(c). That law trumps §1B1.13's requirement of a BOP motion and divests authority to determine whether extraordinary and compelling reasons warrant a sentence reduction in a particular case. See also *United States v. Da Cai Chen*, 127 F.3d 286, 291 (2d. Cir. 1997) (commentary that related to a statute, or to a guideline that mirrors a statute (as here), is not entitled to deference); *United States v. Pierninanzi,* 23 F.3d 670, 683 (2d Cir. 1994).

Most district courts have observed since the passage of the First Step Act that §1B1.13 "has not been yet updated to reflect that defendants (and not the BOP) may move for compassionate release," *United States v. McGraw*, No. 2:02-cr-00018(LJM)(CMM), 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflict with the First Step Act, the newly-enacted statutory provisions must be given effect,"

*Cantu-Rivera*, 2019 WL 2578272 at *2 n.1. See also *Cantu*, 423 F. Supp. 3d at 351 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under §3582.").

The Court's authority to reduce Sepulveda's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] application Note. "As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered courts to make this determination[3], even in the face of a BOP determination that a defendant's case is not extraordinary or compelling. Thus, just over a year ago, a district court in Texas held as follows:

> [T]he correct interpretation of § 3582 (c) (1) (A)--based on the text, statutory history and structure, and consideration of Congress's ability to over any of the Commission's policy statements 'at any time' [... ]--

---

[3] See *U.S. v. Maumau*, 2020 WL 806121 (D. Utah Feb 18, 2020.) (Utah District Court held Under the First Step Act, the length of sentence under current guidelines is an extraordinary and compelling ground to reduce sentence.); *U.S. v. Johns* 2019 WL 264663 (D. Ariz. June 27, 2019) Life sentence in a drug conspiracy reduced for extraordinary and compelling reasons.)

-is that when a defendant brings a motion for sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than the delineated in U.S.S.G. § 1B1.13 cmt. N.1(A)-(C) warrant granting relief.

*Cantu*, 423 F. Supp 3d. at 352. This Court therefore may assess Sepulveda's case in considering whether extraordinary and compelling reasons warrants the reduction of his sentence[4].

A majority of District Courts have concluded that the First Step Act gives sentencing courts the broad discretion previously reserved to the Director of the Bureau of Prisons to use Application Note 1(D) of §1B1.13 to determine if any extraordinary or compelling reasons other than age, medical conditions, or family

---

[4] See *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) ("This Court infers that the Commission would apply the same criteria, including the catch-all provision of Application Note 1 (D), in the wake of the First Step Act's amendment to § 3582(c) (1) (A) and that this Court may use Application Note 1 (D) as a basis for finding extraordinary and compelling reasons to reduce a sentence."); *Cantu*, 423 F. Supp. 3d at 351. ("Given the changes to the statute, the policy-statement provision that was previously applicable to U.S.C. § 3582(c) (1) (A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence- modification provisions under § 3582"); *Cantu-Rivera*, 2019 WL 2578272 at *2 n.1 (finding authority to determine that defendant was entitled to relief under the catch-all provision in the commentary to 1B1.13 because the "current policy statement predates the enactment of the First Step Act and is not likely to be amended within the foreseeable future due to lack of a sufficient number of serving members") Indeed, a majority of district courts have concluded that the First Step Act gives sentencing courts the broad discretion previously reserved to the Director of the Bureau of Prisons to use Application Note 1(D) of§ 1B1.13 to determine if any extraordinary or compelling reasons other than age, medical conditions, or family circumstances exist. *United States v. Beck*, 425 F. Supp. 3d. 573, 579 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 582(c)(1)(A)(i)"). Reason, other than, or in combination with, the reason described in subdivision (A) through (C).... As both parties recognize, however, the dependence on the BOP to determine the existence of an extraordinary and compelling reason is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act. Although it does not appear that any federal circuit Court of appeals has addressed this issue a majority of district Courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons".)

circumstances exist. *See United States v. Owens,* No. 97-CR-2546-CAB, ECF No.93 at 4 (S.D. Cal. Mar. 20, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence and may do so under the 'catch all' provision similar to that recognized in U.S.S.G. Manual § 1B1.13 n.1 (D), that is, 'an extraordinary and compelling reason other than, or in combination with, the reason described in subdivisions {A} through {C}' relating to prisoner health or family relations"). (citation and internal quotation marks omitted)); *United States v. Redd,* 444 F. Supp. 3d 717, 726-727 (E.D.Va. Mar. 16, 2020). ("[T]he court joins other courts in concluding that a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt.n.1 (A)-{C} ..."); *United States v. Perez,* No. 88-10094-JTM, 2020 WL 1180719, at 2 (D. Kan. Mar. 11, 2020) ("Since the passage of the First Step Act, however, a majority of federal district courts have found that the most natural reading of amended §3582(c) and §994(t) is that the District Court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it ... The United States agrees that this is the majority view ... As a majority of district courts have concluded, this court concluded that it has the authority to exercise the same discretion as the BOP

when weighing a request for compassionate relief". (internal citations and quotations marks omitted)).

*United States v. Young,* 458 F. Supp. 3d 838, 844(M.D. Tenn. Mar. 4, 2020) ("Notwithstanding the statutory amendment, ... the 'catch all' provision in Application Note (1)(D) to U.S.S.G. § lB1.13 still cross-references the BOP Director as the individual with authority to determine in a particular prisoner's case the existence of another extraordinary and compelling reason, other than, or in combination with, the reason described in subdivision (A) through (C)...As both parties recognize, however, the dependence on the BOP to determine the existence of an extraordinary and compelling reason . . . is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act. Although it does not appear that any federal Circuit Court of Appeals has addressed this issue, a majority of District Courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the Court's independent finding of extraordinary or compelling reasons.") *United States v. O'Bryan*, 2020 WL 869475, at *2 (D. Kansas Feb. 21, 2020) (agreeing with "numerous courts" that have "recognized  that courts can determine whether extraordinary and compelling    reasons exist to modify a sentence and may do so under the catch all provision similar to the recognized in U.S.S.G. Manual § 1B1.13 n.1 (D), that is, an extraordinary and compelling reason

other, or in combination with, the reasons described in subdivisions (A) through (CJ relating to prisoner health or family relations"); *United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jun. 8, 2020) ("agree[ing] with those courts" that · have concluded that "Guideline § 1B1.13 cmt. n .1 does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant"); *United States v. Valdez*, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019) ("This court concludes that it is no longer bound to the director of the Bureau of Prisons for a definition of extraordinary and compelling reasons beyond application note 1(A) through (C)"); *United States v. Rodriguez,* 424 F. Supp. 3d 674, 681-682 (N.D. Cal. Nov. 25, 2019) ("This Court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts 'can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. 1B1.13 cmt. N.1 (A)-(C) warrant compassionate release").

## THE EFFECT OF *APPRENDI* AND *ALLEYNE* ON THIS CASE WEIGH STRONGLY IN FAVOR OF A SENTENCE REDUCTION TO TIME SERVED UNDER §3582(c)(1)(A)(i)

Mr. Sepulveda's jury was not instructed that it had to determine the drug type and amounts beyond a reasonable doubt, and this justifies relief under the

'catch-all' provision of the amended §3582(c)(1)(A)(i). As a matter of record, the jury was instructed that they did not have to concern themselves with the drug amounts:

> THE COURT: Although the indictment makes reference to specific quantities of controlled substances, quantity is [n]ot an element of the offense charged. The amount or quantity of a controlled substance is only relevant to sentencing in the event of a conviction, and so should not concern you during your deliberation...Transcript of August 3, 1998, Jury instructions page 139, lines 8-18.

The Eleventh Circuit has interpreted *Apprendi* as requiring a jury finding a specific quantity of drugs before applying an enhanced sentence. *See United States v. Acevedo*, 285 F.3d 1010, 1012 ("Sentencing a defendant in excess of 20 years, then the statutory maximum allowed without a jury determination of drug quantity constitutes [p]lain error"). *See also United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001); *United States v. Candelario*, 240 F.3d 1300, 1309 (11th Cir. 2001). The Supreme Court has further found that any fact that increases a mandatory minimum sentence is an element of the offense that must be submitted to the jury. *See Alleyne v. United States*, 570 U.S. 99 (2013) ("Where a maximum sentence is at issue, Apprendi means that a judge who wishes to impose a higher sentence cannot do so unless a jury finds the requisite statutory factual predicate... a defendant can be convicted only if the jury has found each element of the crime of conviction".)

After *Apprendi* and *Alleyne,* before a court can sentence a defendant to more than 20 years under either 21 U.S.C. § 84l(b)(1)(A) or (b)(1)(B), the necessary quantity of drugs must have been determined by the jury beyond a reasonable doubt. "If the government seeks enhanced penalties based on the amounts of drugs under 21 U.S.C. § 841 (b) (1) (A) or (B), the drug quantity must be stated on the indictment and submitted to the fact finders for a finding of proof beyond a reasonable doubt." *United States v. Daniels*, 723 F.3d 562, 570 (5th Cir. 2013). "*Apprendi* requires the government to prove beyond a reasonable doubt the quantity of alleged drug as a fourth element of the offense." *Id.*

In Sepulveda's direct appeal of the above issue, Sepulveda claimed this very error, invoking Supreme Court *Apprendi v. New Jersey, 530 U.S. 466 (2000).* The Eleventh Circuit Court of Appeals in an un-published opinion conceded to Sepulveda's argument that it was error not to submit drug type and quantities to the jury, but that the error was harmless, since the statute for the drug quantities charge in the indictment was 10 to life, and that Sepulveda could have received the same life sentence with or without a jury finding of the drug element. This rationale was invalidated by *Alleyne*:

> It is no answer to say that the defendant could have received the same sentence with or without that fact. It is obvious, for example, that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are identical. One reason is that each crime has different elements and a

defendant can be convicted only if the jury has found each element of the crime of conviction.

*Alleyne v. United States*, 570 U.S. at 114-115.

After *Alleyne* this unconstitutional loop hold of harmless error rulings on the element of drug type and quantity was closed. Sepulveda's statutory penalty on the drug quantity was not found by the jury but were alleged in his PSI and found by his sentencing Judge by a preponderance of the evidence. Sepulveda, objected to the PSI'S alleged computation of drug quantity.[5]

In sum, on February 4, 1999, Sepulveda was sentence to life imprisonment under 21 U.S.C. § 841 (b) (1) (A). This was the wrong statutory maximum penalty without a jury determination of drug quantity, to set the 'statutory penalty' in Sepulveda's case. Sepulveda had to be sentence under 21 U.S.C. §841(b)(1)(C) to 20 years, which is the appropriate default section.

If Mr. Sepulveda were today convicted under the same circumstances, without specific jury findings required by *Alleyne* and *Apprendi,* he would have been sentenced to the statutory maximum 20 years instead of life imprisonment, as a first time non-violent offender.

---

[5] "the drug quantity that sets the 'statutory penalty' under section 404 is the quantity charged as an element in the indictment and found as an element by a jury beyond a reasonable doubt. It is not the quantity alleged in the PSI or found by the judge at sentencing". *United States v. Robinson*, 2019 WL 4543287 at *3 (S.D.FL. August 5, 2019).

### Other Extraordinary and Compelling Reasons to Reduce Sepulveda's Sentence to Time Served Pursuant to 18 U.S.C. § 3582(c)(l)(A)(i) and U.S.S.G. § 1B1.13

Sepulveda was denied counsel throughout pretrial, trial and sentencing. He should have been given a new trial with proper representation as guaranteed by the Sixth Amendment of the United States Constitution. By denying Sepulveda court appointed counsel, the Court acted in a manner inconsistent with due process of law., "In order to proceed pro se, a defendant must clearly and unequivocally raise the right to self-representation". *Faretta v. California*, 422 U.S. 806, 835 (1975).[6] As demonstrated, Sepulveda is serving an unconstitutional life sentence and should have been given a new trial. Based on this fact alone 'extraordinary and compelling reason' exist where relief is authorized, under 18 U.S.C § 3582(c) (1) (A) (i) and must be issued as stated in *Gideon v. Wainwright,* 372 U.S. 335 (1963).

If Sepulveda would have had the advice of counsel, he would have accepted or negotiated through counsel the 27-year plea agreement that was offered to him in this case, by the Honorable AUSA Karen E. Rhew. Even if Sepulveda would

---

[6] THE DEFENDANT: "… I also want to add to that, I would like this Court to give me or appoint me counsel for this sentencing hearing, since I do not have the experience to follow up in this hearing as a prose litigant. I have been forced to go prose. I don't wish to be here representing myself today. And I wish this Court to supply me with counsel… "THE COURT:" … I have denied you a lawyer…" Transcript of first day of sentencing, January 29, 1999. Pg, 4 lines 23-25, pg. 5, lines 1-9 and pg. 6.

have accepted the 27-years, today he would have been a free man at home with his two adult sons and two adult daughters and eleven grandchildren. It should be noted that all of Sepulveda's co-defendants have been released.

Mr. Sepulveda should have not been sentenced under the new law that was passed on November 1, 1987, since his crimes were committed before November 1987. At sentencing, Sepulveda preserved this issue through his interpreter.

> THE INTERPRETER: "I move the Court for factual finding as to the old law ... "Upon review of the legislative history of Title 21 U.S.C. paragraph 841, it became apparent that a statutory life sentence did not come into effect until November of 1988..." "in fact, the defendant was found innocent of the charges that would have involved him through August of 1986, which clearly shows that in the instant case, the defendant should be sentenced under the old law...". Transcript of February 3, 1999, pg. 25, lines 17-25; pg. 26, lines 1-25.

During Sepulveda's trial, there was no testimony given to involve him in the conspiracy past the date of November 1, 1987. In fact, Sepulveda was the only one in the conspiracy to be acquitted of 3 of his 5 counts of a 34-count indictment. These 3 counts would have involved Sepulveda in the conspiracy until August of 1986, which is still within the old law time frame. Sepulveda's life sentence is invalid because the Court committed an *ex post facto* violation against Sepulveda, by sentencing him under the harsher new law of November 1, 1987, which also eliminated Sepulveda's parole right. *See Peugh v. United States*, 569 U.S. 530 (2013):

"We consider here whether there is an *ex post facto* violation when a defendant is sentenced under U.S. Sentencing Guidelines Manual Provisions after he committed his criminal acts, and the new version provides a higher applicable guideline sentencing range that the version in place at the time of the offence. We hold that there is."

*Id.* at 533. "Moreover, the fact that sentencing authority exercise some measure of discretion, will also not defeat an ex post facto claim." *Id.* at 539. In Sepulveda's case this Court has already held, [under the same indictment], that pre-guidelines law applied and required "resentencing", including to a parole-eligible term.

Sepulveda was sentenced on February 4, 1999, prior to the Supreme Courts' decision in *United States v. Booker, 543 U.S. 220 (2000)*. He was subjected to a mandatory Sentencing Guidelines scheme. After Booker's decision, the Sentencing Guidelines became advisory, which allowed the Court's to give less prison time, and Sepulveda would have received relief. Unfortunately, for Sepulveda the Supreme Court held that *Booker* did not have retroactive application, and he could not benefit from the ruling. President Obama initiated the Clemency Project in 2014 to address these very issues claimed here. Now this Court is not restrained to reduce Sepulveda's sentence to time served under the First Step Act and amended 18 U.S.C. 3582(c) (1) (A) (i), for "extraordinary and compelling reasons" as presented here.

## THE RELEVANT FACTORS IN THIS CASE WEIGH STRONGLY IN FAVOR OF A SENTENCE REDUCTION TO TIME SERVED

In more than the 23 years Mr. Sepulveda has already served great transformation has occurred. He has dedicated himself to his education and rehabilitation, personifying the objectives of § 3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment". This factor weighs heavily in support of granting relief. See *Cantu-Rivera*, 2019 WL 2578272. at *2 (recognizing the "extraordinary degree of rehabilitation" Mr. Cantu-Rivera accomplished and caring for other inmates as factors justifying the reduction in sentence). Throughout Sepulveda's incarceration he has demonstrated his good nature, caring, compassion and his willingness to mentor others. Consider the February 25, 2020 report from Dr. Benitez:

> Inmate SEPULVEDA is one of the most respectful, caring and compassionate mentors in the program. He cared for Skill Program participants, who are very difficult to live with. However, Inmate SEPULVEDA cared for them in a manner that demonstrates incredible patience, tolerance and compassion. He performs duties for inmates in the program that would otherwise be performed by a nurse assistant in the civilian world. Inmate SEPULVEDA has never once complained or refused to continue assistant low functioning/autistic or brain injured patients/inmates. Inmate SEPULVEDA has helped many individuals with the same regard during his time as a Mentor Health Companion. He has taken the most difficult, mentally ill and/or low functioning inmates under his care.!"

> Inmate SEPULVEDA assists staff by providing feedback and outlining solutions to problems that if not addressed could lead to serious safety and security issues... He has been a positive role model

and positive influence in the Skills Program unit...he never resorts to using an aggressive style to get his point across...

PROGNOSIS: "Great prognosis is expected, as SEPULVEDA is able to find appropriate solutions to problems, remain objective, make better decisions and understands the chain effect of his actions on others.

Inmate SEPULVEDA is expected to continue practicing the concepts learned in this program and maintain a criminal free lifestyle in society".

Dr. Mouriz , the Challenge Program Coordinator also had this to say about Mr. Sepulveda:

For over four years he (Sepulveda) was a Suicide Companion, a position of trust wherein he received training to observe and provide counsel to inmates who are on Suicide Watch. This position is very important in that the safety and survival of other inmates was trusted to him. In addition, he was also a mentor in the Bureau of Prisons' Skills Program for over four years, . a program designed to assist inmates with intellectual deficits to adjust to and adapt at a functional level within the prison milieu... "

He has received over 20 affidavits from inmates whom he assisted while in the Skills Program and they have attested to how he helped then to adjust and function while in prison".

In addition, as a result of his pleasant demeanor and history of positive behavior, numerous Bureau of Prisons Staff members have also provided Memorandums highlighting his good character and conduct".

As noted above, inmate Sepulveda has demonstrated he is capable and willing to live within the established rules set by the law and to continue to improve. He has worked to change character defects which led to his incarceration and has prepared himself for re-entry to society. He has marketable skills, a good work ethic, excellent family relations, and the financial support for a successful return to society. I have known inmate Sepulveda for nearly 20-years, and it is my

professional opinion inmate Sepulveda could be an asset to society if
giving a deserved second opportunity.  I am in support of any
consideration regarding a reduction of sentence or release
from sentence for inmate Sepulveda".[7]

Mr. Sepulveda has accepted responsibility for his actions and is deeply

remorseful.  At 65-years old, he lives in shame for the decisions he made in his

younger years, that have caused so much pain to his family. But he has used the

time he has spent in prison to turn his life around, and his continued incarceration

does not serve any legitimate sentencing goal at this point. There is no doubt that

the over 23 years (27 years with good time) that Sepulveda has already served is

more the sufficient to achieve the objectives of his sentence and incarceration. In

fact, Sepulveda's legal sentence as demonstrated here under 21 U.S.C. § 841 (b)

(1) (C) is 20-years.  This means he has served over 3 years of his constitutional

sentence.

He would not pose a danger to the community if released.  On November 20,

2020 he turned 65 years old.  Even during his drug activity which began when he

was 22 years old, he never harmed anyone in the commission of almost exclusively

marijuana offenses, which ended 34 years ago.

---

[7] As mentioned above, Sepulveda had no prior criminal record, and since his arrest and incarceration, he has been a
model inmate with only two insignificant non-violent rule reports, and one of the two reports made three parts of
one incident. See PROGRESS REPORT_INSTITUTIONAL ADJUSTMENT, by unit Manager J.  BOLEY: "...
Inmate Sepulveda is a Model inmate . . . ". Also see, letter by BOP Psychologies Dr. Javier Mouriz, PhD: "Inmate
Sepulveda is a model inmate and has been giving outstanding work evaluations... ".

Sepulveda's rehabilitation is further evidenced by his accomplishments and the evolution of his character while in prison. Over the past two plus decades, Sepulveda has worked tireless to educate himself, while incarcerated, participating in over 4580 hours of educational programing. He has completed some 62 educational courses and has an extensive inmate educational transcript in his BOP file. These courses include: GED, Microsoft Computer, Occupational Electronics Technology from the Florida Department of Education, Culinary Arts Program through the National Restaurant Association, Hospitality and Restaurant Management, Image Consulting for Business, Money Smart, Transition Employment, Commercial Driver's License, and many others.[8]

## CONCLUSION

Congress never intended to permit, let alone to mandate, the excessive punishment Mr. Sepulveda received in this case. It has now given the Court the power to grant him relief from that sentence. Mr. Sepulveda respectfully requests that the Court take this opportunity to grant a reduction in sentence based on extraordinary and compelling reasons as shown above and reduce his sentence to time served.

---

[8] Sepulveda's educational programming is in accord with *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court can and indeed must, consider post-offense development under § 3553 (a), which provides "the most up-to-date picture" of the defendant's history and characteristics and" sheds light on the likelihood that [the defendant] will engage in future criminal conduct" Id at 492. After considering all of the circumstances in this case, this court should conclude that nearly 24 years that Sepulveda has already served, is more than sufficient to satisfy the purposes of sentencing.

WHEREFORE, Undersigned Counsel prays that this Honorable Court will grant Mr. Sepulveda's request and reduce his sentence to time served.

DATED THIS 19th day of May 2021.

Respectfully submitted,

s/Darlene Calzon Barror
DARLENE CALZON BARROR, ESQUIRE
506 North Armenia Avenue
Tampa, Florida 33609
Tel: (813) 877-6970
Fax: (813) 879-2610
Darlene@BarrorLaw.com
Attorney for Defendant
Florida Bar No. 0860379

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically by CM/ECF system which will send an electronic filing to THE OFFICE OF THE ASSISTANT UNITED STATES ATTORNEY, this 19th day of May 2021.

s/Darlene Calzon Barror
DARLENE CALZON BARROR, ESQUIRE

COMPOSITE EXHIBIT:

PHOTOGRAPHS PROVIDED BY MR. SEPULVEDA



Top photo, at Sepulveda's graduation from Culinary Arts, through the National Restaurant Association. (First in his class). From left to right: Sepulveda's half brother Carlos, the mother of Sepulveda's son Joesu Gloria, his son Joesu, Sepulveda's stepmother Miosoti and his father Caleb.

By Santiago Rivera, Culinary Instructor: ... Mr. Sepulveda ... was a stellar student, achieving high exam scores in class ... Mr. Sepulveda displayed a high degree of integrity, responsibility and ambition ... he has proven his leadership ability by assisting other students in the preparation of meals for staff and students ... He was also a most dependable team player. Mr. Sepulveda would be an asset to any organization. He is highly recommended and I am happy to give him my wholehearted endorsement. Please feel free to contact me with any questions you have about Mr. Sepulveda ...". www.srivera@csulinary.com. (See exhibit-38 ), letter of recommendation.



Bottom left photo, Sepulveda at his graduation from Ocupational Electronics Technology, trough the Florida Department of Education.

21





Top left photo, during Sepulveda's graduation from the Challege Program. Bottom photo, Sepulveda holding his designed of a machanical brain with the eight criminal thinking errors. Sepulveda was the first inmate to ever create a design of a machanical brain to demonstrate the eight criminal thinking errors during a Challege Program graduation. This was an unexpected surprise for the graduating class and staff, and it was praised by Psychology service.



Top photo, Sepulveda at visit with his brother New York Senator Luis R. Sepulveda. During this visit Sepulveda's brother was a N.Y. Assemblyman. By Senator Sepulveda: "My name is Luis Sepulveda, and Iam the brother of Jose Elias Sepulveda ... If my brother is reales from prison he has a place to stay with our family that wishes to have him back home with us. I'm more then willing to provide any help he may need to begin his new life. Additionally, my brother has the unconditional backing of our family. (See exhibit- 39 ), affidavit.

Bottom photo, Sepulveda demonstrating the sample books he has writing with his cover designs, ready for publishing.

Bureau of Prisons Psychology Service, by Dr. Javier Mouriz Phd.: ... "It should be noted that while in prison inmamte Sepulveda has written five books which are all copyrighted via the United States Copyright Office. Among these books are a three-part series of children's books about education, leadership, and a basic sense of business. The other books include an autobiography and a collection of poems". (See exhibit- 35 ), latter.



Finally, Sepulveda's mother is 83 years old, and increasingly requirs the support of here only son. She is ready and willing to support him as he rebuilds his life. At 83 years old, one of her greatest fears is that she will not live to see her son a free man.[13]



Sepulveda at visit with his mather Luz and his father Caleb.

---

13. Sepulveda has two adult son's and two adult dughters, and eleven (11) grandchildren, that were all born during his incarceration. He has exellent communication with them and has meet them all through visit. Sepulveda stays in contact with all of them via phone, e-mail, letters and visits. And they all want there dad and grandpa home.



Top left photo, Sepulveda at visit with:
his granddaughter Victoria, Bottom left
photo, Sepulveda at visit with his grandson
Dusting.



Top right group photo, Sepulveda at visit
embracing his granddaughter Mia Rasa and
grandson Logan, behind Sepulveda from left
to right, his daughter-in-law Amanda, son
Jose jr., with Sepulveda's grandson Dustin.




Top left photo, Sepulveda's elder son Jose jr. at center with seven of
Sepulveda's eleven gradchildren. Top righ photo, Sepulveda at visit with his
half sister Vivian. Bottom photo, at visit from left to righ: Sepulveda's elder
daughter Miosoti, granddaughter Jailin, Sepulveda, his son-in-law Miguel and
Sepulveda's gradson Jose Miguel.



27



Top photo, Sepulveda at visit with: Jodi his son Jose jr's fiancé and his elder son Jose jr.

Bottom photo, at visit from left to righ: Sepulveda's stepfather Juaquin, Sepulveda's mother Luz and Sepulveda.



06/10/2017 13:03



Top photo, from left to right is Sepulveda's half brother Caleb III, Sepulveda's father and Sepulveda's oldest son Jose jr.. Bottom photo, from left to right Sepulveda's half brother Elliot, Sepulveda's father Caleb and Sepulveda's half sister Vivian.

This two recent photos, show Sepulveda's father Caleb who is 85 years old, during his last stay in the hospital. At this time Sepulveda's father is at home bedridden and is not expected to live long. Sepulveda implores for marcy from the Court and the AUSA, to give him the opportunity to join his family at his father's deathbed.

